COPY
FILED
FEB 1 3 2007
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____ Deputy

1             UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| 3   UNITED STATES OF AMERICA, | ) | Case 3:05-cr-00054-JKS |
| 4            Plaintiff, | ) | Anchorage, Alaska |
| 5     vs. | ) | Thursday, December 21, 2006 |
| | ) | 10:00 o'clock a.m. |
| 6   WESLEY BARTLETT BUERKLE, | ) | |
| 7            Defendant. | ) | **CHANGE OF PLEA** |
| | ) | **(STATUS CONFERENCE)** |

8

9            **TRANSCRIPT OF PROCEEDINGS**

10      BEFORE THE HONORABLE JAMES K. SINGLETON
           UNITED STATES DISTRICT JUDGE

11

   APPEARANCES:

12

For the Plaintiff:      DAVID NESBETT
13                    Assistant U.S. Attorney
                    U.S. Attorney's Office
14                    222 West 7th Avenue, Box 9, Room 253
                    Anchorage, Alaska  99513-7567
15                    907-271-5071

16  For the Defendant:      KEVIN MCCOY
                    Assistant Federal Public Defender
17                    Federal Public Defender's Office
                    550 West 7th Avenue, Suite 1600
18                    Anchorage, Alaska  99501
                    907-646-3400

19

   Probation Officer:      TIM ASTLE
20                    U.S. Pretrial/Probation Office
                    222 West 7th Avenue, Box 48, Room 168
21                    Anchorage, Alaska  99513
                    907-271-5494

22

   Court Recorder:         SUZANNETTE LUCERO
23                    U.S. District Court
                    222 West 7th Avenue, Box 4
24                    Anchorage, Alaska  99513-7564
                    907-677-6111

25

*Gaylene's Word Services*
(907) 338-3936       Exhibit A - Page 1 of 26
                       44

 1  APPEARANCES (Continued):

 2  Transcription Service:    GAYLENE'S WORD SERVICES
                              M. Gaylene Larrecou
 3                            7330 Madelynne Dr.
                              Anchorage, Alaska  99504-4659
 4                            907-338-3936

 5

 6

 7  Proceedings recorded by electronic sound recording; transcript
    produced by transcription service.

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **ANCHORAGE, ALASKA – THURSDAY, DECEMBER 21, 2006**

2    (Courtroom 4)

3        (On record at 10:00:59 a.m.)

4            THE CLERK:  All rise.  His Honor the Court, the

5    United States District Court for the District of Alaska is now

6    in session, with the Honorable James K. Singleton presiding.

7    Please be seated.

8            THE COURT:  Well, the Court has before it at this

9    time the matter of *United States versus Buerkle*,

10    3:05-cr-00054.  And this is a status conference, basically a

11    scheduling conference so that counsel could meet with

12    Mr. Buerkle and each other and review their calendars and let

13    me know what -- where we're going to go from here.  Mr. McCoy?

14            MR. MCCOY:  Yes, Your Honor.  I think the way we

15    would like to proceed today is Mr. Buerkle intends to plead

16    guilty to the first two counts in the indictment and admit the

17    allegations in the forfeiture.  There is no written plea

18    agreement; however, the government has promised to recommend a

19    credit-for-time-served sentence at sentencing, which we would

20    anticipate to be in March.  And Mr. Buerkle has agreed not to

21    oppose a request for mental health counseling as a condition

22    of supervised release.  And so what we would propose to do is

23    proceed with a change-of-plea hearing today, if that's

24    agreeable.

25            THE COURT:  Very well.  And, Mr. Nesbett, you're in

1  agreement with that disposition?

2         MR. NESBETT:  Yes, I am, Your Honor.

3         THE COURT:  All right.  And you concur with

4  Mr. McCoy's statement that there is no plea agreement as such

5  in this case?

6         MR. NESBETT:  That is correct, yes.

7         THE COURT:  All right.  Have the parties discussed

8  the indictment in this case?  And as I understand it, you're

9  going to plead to basically the three counts in the

10  indictment?

11        MR. MCCOY:  Yes, sir.

12        THE COURT:  All right.  The first count is felon in

13  possession of a firearm in violation of 18 U.S. Code Section

14  922(g)(1) and 924(a)(2), the second is prohibited person in

15  possession of a firearm 18 U.S. Code Section 922(g)(4) and

16  924(a)(2), and the third is criminal forfeiture.

17        And the first count is based upon Mr. Buerkle's

18  possession of a Bushmaster .223-caliber, semiautomatic rifle,

19  serial number BF1405530, and a Mossberg 12-gauge shotgun,

20  serial number DA002556.  And the predicate felony is a felony

21  driving under the influence in the State of California, County

22  of Kern, on November 17th, 1994, and bears California

23  identification numbers SC058175a and SC044059a.  Is that the

24  count that he's going to be pleading to?

25        MR. MCCOY:  It is.

1          THE COURT:  Okay.  And what -- Mr. Nesbett, did you

2     look up the maximum penalty for felon in possession of

3     firearm?

4          MR. NESBETT:  Yes, Your Honor.  The maximum penalty

5     is 10 years in jail, $250,000 fine, three years of supervised

6     release, and a $100 special assessment for each count.

7          THE COURT:  Very well.  And, Mr. McCoy, did you

8     discuss those potential penalties with Mr. Buerkle?

9          MR. MCCOY:  I have, Your Honor.  I've -- I can also

10    just sort of give the Court a heads-up.  We believe that the

11    advisory guideline range at sentencing will be 15 to 21

12    months.  The government believes it may be 21 to 27.  We'll

13    just sort that out when we get there, but that's where we are

14    under the guidelines.

15         THE COURT:  Okay.  Mr. Buerkle, before I can accept

16    a plea from you to a serious offense, I have to ask you some

17    questions to make sure that your legal rights have been

18    protected and that pleading guilty as opposed to going to

19    trial is your free choice.  Did you understand that, sir?

20         MR. BUERKLE:  Yes.

21         THE COURT:  And in order for me to be able to rely

22    on the truthfulness of your answers -- and bear in mind I'm

23    not trying to embarrass you or be rude to you or pry into your

24    private affairs. I'm just trying to find out if your rights

25    have been protected.  But I have to be able to rely on the

1  truthfulness of your answers to my questions, and in order to

2  do that, I'm going to put you under oath and have you swear to

3  tell the truth as a witness so you'll understand if you tell

4  me anything that is not true, then you could separately be

5  prosecuted for perjury or false statement.  Do you understand

6  that, sir?

7          MR. BUERKLE:  Yes, I do.

8          THE COURT:  Very well.  Would you please stand and

9  take the oath as a witness.

10          THE CLERK:  Please raise your right hand.

11          **WESLEY BARTLETT BUERKLE, DEFENDANT, SWORN**

12          THE CLERK:  Thank you.  Please be seated.  For the

13  court's record, would you please state your full name,

14  spelling your last name?

15          THE WITNESS:  Wesley Bartlett Buerkle.  Last name is

16  B-u-e-r-k-l-e.

17          THE CLERK:  Can you please spell your middle name?

18          THE WITNESS:  B-a-r-t-l-e-t-t.

19          THE CLERK:  Thank you.

20          THE COURT:  Thank you, sir.

21                  **VOIR DIRE EXAMINATION**

22  BY THE COURT:

23  Q    How old are you, Mr. Buerkle?

24  A    Forty-eight.

25  Q    Okay.  And how far in school did you go, sir?

1  A    Twelfth grade. Well, actually it may have been the 14th.

2  Q    Okay. So you may have had two years of college?

3  A    I -- I've had two years of college, yes.

4  Q    Okay. And during your life, sir, your adult life, what

5  kind of work have you done?

6  A    Construction mostly. Shop foreman, supervisor, in

7  construction.

8  Q    Okay. A person charged with an offense has a number of

9  very important rights, and we're going to be going over most

10  of those rights in a moment. But the most important right of

11  all is the right to what is known as effective assistance of

12  counsel. That means having a lawyer who's ready, willing, and

13  able to represent you.

14      A lawyer is ready if he's prepared, if he's investigated

15  the facts, talked to the witnesses, studied the law, and

16  advised you regarding your rights and helped you to understand

17  whether it's in your best interest to go to trial and test the

18  government's case against a jury, or enter a plea of guilty.

19  He's willing if he's taken a real interest in your case and

20  done the very best he can under the circumstances to get the

21  best possible result for you that the law and the facts would

22  allow. And he's able if he has the background, education, and

23  experience to do those things.

24      While the Court can vouch for an attorney's ability, his

25  competence in the legal sense, particularly lawyers like

1    Mr. McCoy who's been before the Court many, many times, only

2    you can tell me if Mr. McCoy has been ready and willing to

3    represent you in this case.  Are you satisfied that he has?

4    A    Yes, actually, I am.

5    Q    Do you think he's done everything he can to get the best

6    result for you the law would allow?

7    A    Under the circumstances, I believe he has.

8    Q    Okay.

9         THE COURT:  Mr. McCoy, you've had a chance -- and I

10   don't want to belabor this, but you've had a chance to review

11   all the reports, the report generated by the mental health

12   professional in Washington, the reports generated at the

13   federal medical center, and without telling me any

14   conversations you've had with Mr. Buerkle or any

15   independent -- or the details in any independent investigation

16   that you made, are you satisfied that Mr. Buerkle is competent

17   to proceed?

18        MR. MCCOY:  Yes, I am, Your Honor.

19        THE COURT:  Okay.  And have you -- and, again, I'm

20   not asking you to give me any details or disclose any

21   conversations you had with Mr. Buerkle or with anyone else,

22   but have you at least looked into the possibility of some kind

23   of diminished-capacity defense or some kind of mental health

24   defense to these charges?

25        MR. MCCOY:  I have, Your Honor.

```
 1              THE COURT:  Okay.
 2   BY THE COURT:
 3   Q    The -- Mr. Nesbett indicated that the maximum penalty for
 4   Count 1, felon in possession of a firearm.  Were you aware of
 5   those penalties, Mr. Buerkle?
 6   A    For having a firearm?
 7   Q    Yes, sir.
 8   A    Not in the State of Alaska, I was not.
 9   Q    Okay.  Are you aware of them now?
10   A    I am aware of them now vividly, yes.
11   Q    Oh, Mr. McCoy hasn't had a chance to discuss that with
12   you?
13   A    Yes, we have discussed it, but at the time that -- before
14   all this happened --
15   Q    Uh-huh (affirmative).
16   A    -- I had no idea that the State of Alaska -- but then,
17   again, this is a federal --
18   Q    Uh-huh (affirmative).
19   A    -- issue now.
20   Q    Uh-huh (affirmative).
21   A    At -- at that time I was more concerned with the state
22   level.
23   Q    I see.
24   A    And I didn't really think about the consequences of a
25   federal issue.
```

1   Q    I see.

2         THE COURT:  Why -- Count 2 charges that he's a

3 prohibited person.  Why is he a prohibited person?  Oh, I see,

4 okay.  And it's because he'd previously been committed to a

5 mental institution?

6         MR. NESBETT:  Yes, Your Honor.

7         THE COURT:  And what institution is that?

8         MR. NESBETT:  Which specific institution?

9         THE COURT:  Yeah.  Do you know the -- what would you

10 prove if that went to court?

11         MR. MCCOY:  It's been so long, Judge.  I can't --

12         MR. NESBETT:  Right, I know.

13         MR. MCCOY:  -- identify it as well, so --

14         MR. NESBETT:  This was not in Alaska.  He was --

15 this was in California where --

16         MR. MCCOY:  It's (simultaneous speech) --

17         MR. NESBETT:  -- he was diagnosed at the time.  And

18 which specific institution it was?

19         THE COURT:  Uh-huh (affirmative).

20         MR. NESBETT:  Let me see if I can find that, Your

21 Honor.

22         THE COURT:  Yeah, and what were the dates?

23    (Whispered conversation)

24         MR. NESBETT:  Do you have that handy?  Oh.

25    (Whispered conversation)

1          MR. NESBETT:  I'm reading -- Your Honor, I'm reading

2    from the Pretrial Services report, and it though he was

3    contacted by officers.  He was then committed to the

4    Atascadero State Mental Hospital, and this is in April of 1987

5    through April of 1988.

6          THE COURT:  Okay.

7    BY THE COURT:

8    Q    And is that your understanding as well, Mr. Buerkle?

9    A    Yes, sir.

10         (Whispered conversation)

11         MR. NESBETT:  It looks as though that was not the

12   only time as well.  In 1994 there's also Patton, P-a-t-t-o-n,

13   State Mental Hospital.  So it looks like on at least one

14   occasion specifically he was committed, Your Honor.

15         THE COURT:  Okay.

16   BY THE COURT:

17   Q    And are you now aware, Mr. Buerkle, that men and women

18   who have been committed to mental institutions are not

19   permitted to possess firearms?

20   A    At this time, I'm very aware, yes, sir.

21         THE COURT:  Okay.  Now, what -- I assume the proof

22   on the two counts would be relatively close.  It looks like

23   they're the same weapons.  Could you outline just briefly,

24   Mr. Nesbett, what the government would be prepared to prove on

25   those two?

1    MR. NESBETT:  Yes, Your Honor.   In April of 2005 in

2  Anchorage, there was a complaint, a telephone call from a

3  neighbor of Mr. Buerkle's, who called the officers, who was

4  concerned about -- who had seen Mr. Buerkle handling a firearm

5  and was concerned about it, called the police.  The police

6  arrived, contacted Mr. Buerkle, and who appeared intoxicated

7  to them.  They followed up -- he was very cooperative and very

8  helpful with the officers when they arrived, and he allowed

9  them to search his residence.  They found the two firearms

10  that were mentioned more particularly by the Court already at

11  this hearing and also described in the indictment.  And he was

12  also a felon, that's also been described by the Court, the

13  former DUI, and he has been committed to a mental institution.

14  And those firearms were transported in interstate commerce.

15    THE COURT:  Okay.  What -- did you look up what the

16  maximum and minimum penalties if any for Count 2 were?

17    MR. NESBETT:  I believe they're the same, Your

18  Honor, as Count 1.

19    THE COURT:  Okay.  And is it your understanding

20  that, for sentencing purposes, these would kind of merge?

21    MR. NESBETT:  Yes.

22    THE COURT:  There's basically just one sentence?

23    MR. NESBETT:  That's our understanding.  I

24  believe -- we've talked about that at length, and I believe

25  that, yes, Your Honor, they --

1          THE COURT:  All right.

2          MR. NESBETT:  -- would merge as one count.

3          THE COURT:  So that the relatively narrow area of

4  disagreement that Mr. McCoy has alluded to reflects both of

5  your views?  In other words, that the range is such and such,

6  and the argument is going to be about that range?

7          MR. NESBETT:  Yes, Your Honor.  And the very narrow

8  disagreement that we have -- and it's not necessarily a

9  disagreement.  It's more making sure that we cover the highest

10 risk from the guidelines perspective that Mr. Buerkle would be

11 facing, and it has to do with the criminal history category.

12 It's not a base offense level calculation.

13         THE COURT:  Uh-huh (affirmative).

14         MR. NESBETT:  And so it's going to depend a little

15 bit on the pre -- on the probation officer's report and the

16 presentence report and what criminal history is going to

17 count.

18         THE COURT:  Uh-huh (affirmative).

19         MR. NESBETT:  I think it's going to be relatively

20 simple to determine one way or the other, and it's not a real

21 point of contention, Your Honor.

22         THE COURT:  Okay, then.  Is that your expectation as

23 well, Mr. McCoy?

24         MR. MCCOY:  Yes, sir.  I think it relates to whether

25 there's a DUI conviction here in Anchorage, and I think it

1  will be easily resolved.

2  　　　　　THE COURT:  Okay.  Okay.

3  BY THE COURT:

4  Q　　And were you aware of this -- or the basis for this

5  discussion that Mr. Nesbett and Mr. McCoy have just had about

6  the sentencing guidelines and the range and how that works?

7  A　　Yes.

8  Q　　Okay.  Now, the thing that needs to be mentioned is that

9  prior to probably a year ago, maybe a little longer than that,

10  sentencing in -- criminal sentencing in federal court was

11  subject to certain mandatory guidelines.  A person's criminal

12  history was calculated, the offense level for a particular

13  offense was calculated, those two were compared, and out of

14  that comparison, the range of sentence.  Both Mr. Nesbett and

15  Mr. McCoy have talked a little bit about their expectations of

16  what that range would be.

17  　　　　What happened about a year ago was that the U.S. Supreme

18  Court said that those guidelines were no longer mandatory,

19  that, henceforth, they're discretionary.  So there is the

20  potential that a person could be sentenced outside of those

21  guidelines, but there is no potential that a person could be

22  sentenced to more than the maximum penalty, and that's why

23  that maximum penalty is very important, because it fixes the

24  maximum that a person could get.  And Mr. Nesbett has already

25  indicated what the maximum penalties for these two offenses

1    are, and it's already been explained that Mr. Nesbett and

2    Mr. McCoy agree, and I have no reason to doubt, that basically

3    you would only get one sentence.  In other words, you wouldn't

4    get pyramided sentences for those two offenses; they're too

5    close in nature.

6        So on the first offense, in order to convict you the

7    government would have to prove beyond reasonable doubt that on

8    or about April 30th, 2005, you knowingly possessed -- and they

9    say in or affecting commerce.  That just means the weapons you

10   possessed were not manufactured here in Alaska.  They came

11   from somewhere else.  And that the two weapons were the

12   Bushmaster .223-caliber semiautomatic rifle and the Mossberg

13   12-gauge shotgun.

14       In addition, they'd have to prove that prior to that

15   date, you'd been convicted of a felony offense somewhere, and

16   in this case it's specified Kern County, California, DUI.

17       And the mental state for that offense, what in Latin is

18   called the *mens rea*, is knowing that you're possessing the

19   firearms, not necessarily knowing that it's illegal to possess

20   a firearm.

21       Were you aware that the government would have to prove

22   all of those things beyond reasonable doubt if the case went

23   to trial?

24   A    Yes.

25   Q    Okay.  Now, the second count is very similar, but there

1  the focus is not on having previously been convicted of a

2  felony but rather on having previously been committed to a

3  mental health facility.  The same date, April 30th, 2005;

4  roughly; the same two firearms; the same mental state,

5  knowingly possessing the firearms; and the only distinguishing

6  factor is, in this case, it's the mental institution rather

7  than the prior felony.  Were you aware of that, sir?

8  A    Not at the time, but I'm aware of it now.

9  Q    Okay.  And are you satisfied that if the case went to

10  trial, the government could prove all of those things?

11  A    I'm fairly well convinced that it wouldn't take a whole

12  lot of effort to prove those things.

13  Q    Okay.  Now, the criminal forfeiture just says that you

14  agree, by virtue of your plea, to surrender your ownership

15  rights and possession of those two firearms to the government.

16  Do you in fact agree with that?

17  A    Yeah, if there's no alternative.  I couldn't just give

18  them away to a family member, the --

19  Q    Boy, that would have to be worked out, but I think the

20  government wants to two weapons.

21      MR. NESBETT:  I will let the forfeiture attorney

22  handle that, Your Honor.  I don't -- I think the most

23  important thing is that he not get them back.

24      THE COURT:  Uh-huh (affirmative).

25      MR. NESBETT:  I don't know if we have a -- if

1    someone else has an ownership interest, then that's fine with

2    the government.

3              THE COURT:  Oh, okay.

4    BY THE COURT:

5    Q    Well, yeah, I think for purposes of this hearing today,

6    Mr. Buerkle, you're giving up those -- your interest in those

7    weapons.

8    A    That'll be fine, yes.

9    Q    Now, if -- yeah.  Okay.  Now, has anybody made any threat

10   against you, a close friend, or family member in any effort to

11   coerce or force you to plead guilty in this case?

12   A    No.

13   Q    All right.  Now, earlier Mr. McCoy indicated that there

14   was no agreement in this case as to an appropriate sentence.

15   He outlined briefly what the ranges were, and he indicated

16   that the government had agreed to recommend that you receive

17   credit for all time served.  Has anyone made any additional

18   promises to you of any kind in order to induce you to plead

19   guilty?

20   A    No.  That was the best agreement that was offered.

21   Q    Okay.  And it is important that you realize, sir, that

22   these offenses are felonies, and just like the earlier felony

23   disqualified you from possessing or owning firearms, so also

24   these convictions would have that same effect.  You'd lose a

25   number of important rights if you're convicted of this

1  offense, as you would be if you plead guilty.  You would give

2  up the right to vote, the right to hold public office, the

3  right to serve on a jury, and the right to possess any kind of

4  firearm.  Do you understand that, sir?

5  A    Yes, I do.

6  Q    Okay.  Now, did Mr. McCoy discuss with you what

7  supervised release means, that it's similar to probation in

8  that a person is at liberty in the community, he's not in an

9  institution, but he is subject to restrictions on his

10 activities and behaviors.  He's under an obligation to report

11 periodically to a probation officer and permit the probation

12 officer to monitor his finances and his employment, education,

13 things of that kind.

14     The main difference between supervised release and

15 probation is that probation is imposed in lieu of or in place

16 of a sentence of imprisonment, whereas supervised release is

17 tacked on at the end of a period of imprisonment.

18     Was all that explained to you, sir?

19 A    Yes, it was, actually.  To the exact terms of which it

20 consisted of was vague.  I guess it mostly depended on the

21 probation officer or --

22 Q    Yeah.

23 A    -- the supervisory.

24 Q    Well, you're right.  Mr. McCoy did focus on one condition

25 of supervised release, and that is that you seek and cooperate

1  with mental health professionals, that there would be a mental

2  health assessment, and then based on that assessment, a plan

3  would be developed to aid you in dealing with any problems you

4  might have.

5       Beyond that, the -- there are special and general

6  conditions of supervision.  All of those can be debated at

7  sentencing.  The primary ones are restrictions on your

8  movement and the obligation to cooperate with a probation

9  officer, restrictions on any further offenses of any kind, but

10  those are the basic things.  There would be others.

11       You are going to have a chance to review the presentence

12  report before I see it, and you will have a chance to discuss

13  it with Mr. McCoy.

14            THE COURT:  And I hope the -- any probation

15  conditions -- or supervised release conditions will be spelled

16  out in the presentence report.  I know they have standard and

17  general ones, but I think it is important that prior to

18  sentencing and prior to the final presentence report, all

19  potential supervised release conditions, both general and

20  special, are disclosed, and if there's any argument about

21  them, that that argument surfaces.  I know that sometimes in

22  the past, I'm not sure we've done that, and there have been

23  occasions in which a particular condition of supervised

24  release, even though it's boilerplate, strikes a particular

25  defendant badly because of circumstances in his or her life.

1   And so, yeah, if we could spell those out.

2          One that is a reoccurring problem, but not in every

3   case, there is a prohibition on associating with other men and

4   women who may have been convicted of felonies.  And you can

5   understand why people, they want to break up gangs, but a lot

6   of times it's simply other kinds of felonies, so there are

7   restrictions.  And I don't know, Mr. McCoy, if Mr. Buerkle has

8   any close or relatives who have any kind of criminal history.

9   You probably should discuss that.  I don't want you to tell me

10  but --

11          MR. MCCOY:  No.  I think the suggestion of

12  disclosing the proposed conditions is a good one.  It's -- in

13  fact, it should be done in just about every case, because I do

14  think sometimes people are surprised.

15          THE COURT:  Yeah.

16          MR. MCCOY:  And so I think it's -- and in this case,

17  it's a good idea.  So I think it's a good idea.

18          THE COURT:  Okay.  Okay.  And you will do that?

19          MR. ASTLE:  Yeah -- just for clarification, by

20  amendment of the local rule right now, we are releasing 15

21  days prior to sentencing all the special conditions.  What

22  I'll do in this case is then also make sure that the general

23  conditions are included if the 15-day notice prior to

24  sentencing will suffice both parties.

25          THE COURT:  Oh, I'm sure.

BUERKLE - VOIR DIRE

```
1              MR. MCCOY:  It will, yes.

2              THE COURT:  Okay.  Okay.  That's fine.

3              MR. MCCOY:  And even a standard judgment form

4    attaching it to the record --

5              THE COURT:  Yeah.

6              MR. MCCOY:  -- would be enough to deal with the

7    generals, and then --

8              THE COURT:  Okay.

9              MR. MCCOY:  -- specials we can discuss.

10             THE COURT:  Okay.  And that probably would be good,

11   too, to go over with Mr. Buerkle --

12             MR. MCCOY:  Yes.

13             THE COURT:  -- what a judgment looks like.

14             MR. MCCOY:  Absolutely.

15             THE COURT:  All right.  Mr. Nesbett, any other areas

16   of inquiry that you're concerned about?

17             MR. NESBETT:  I want to make sure, have we covered

18   the trial rights?

19             THE COURT:  Oh.

20             MR. NESBETT:  I want to make sure we cover that,

21   yeah.

22             THE COURT:  No, I don't think we did.

23             MR. NESBETT:  No.

24   BY THE COURT:

25   Q    Now, did you understand, Mr. Buerkle, that you had a
```

1   right to plead not guilty to any offense charged against you

2   and to persist in that plea, that you would then have the

3   right to a trial by jury, that at trial you would be presumed

4   to be innocent and the government would have to prove your

5   guilt beyond a reasonable doubt?  And you would have the right

6   to the assistance of counsel for your defense, the right to

7   see and hear all the witnesses and have them cross-examined in

8   your defense, the right on your own part to decline to testify

9   unless you voluntarily elected to testify in your own defense,

10  and the right to the issuance of subpoenas or compulsory

11  process to compel the attendance of witnesses to testify in

12  your defense?  Did you understand that should you decide not

13  to testify or put on any evidence, those facts could not be

14  used against you; in other words, the jury could not hold it

15  against you that you didn't testify?  On the other hand, if

16  you did testify, the jury would have to be instructed to treat

17  your testimony the same way they treat anybody else's.

18       Did you -- were you aware you had all of those rights,

19  Mr. Buerkle?

20  A    Yes, I was.

21  Q    And have you discussed those rights with Mr. McCoy?

22  A    Yes.

23  Q    And did you understand, sir, that if you enter a plea

24  today, you would give up those rights?

25  A    Yes.

1   Q    Okay.  And is it your intention to give up those rights?

2   A    At this point, yes, it is, sir.

3            THE COURT:  Okay.  Anything further, Mr. Nesbett?

4            MR. NESBETT:  No, Your Honor.  Thank you.

5            THE COURT:  Any other areas of concern, Mr. McCoy,

6   to Mr. Buerkle that he wants to go over or should be

7   established on the record?

8            MR. MCCOY:  I do not believe so, Judge.  Thank you.

9            THE COURT:  Okay.

10  BY THE COURT:

11  Q    Mr. Buerkle, how do you wish to plead to the two counts

12  in the indictment, possession of two firearms by a felon and

13  possession of two firearms by someone previously committed to

14  a mental health institution, guilty or not guilty?

15  A    Guilty.

16           THE COURT:  Okay.  I'm prepared to find, based upon

17  the record developed here today and also the mental health

18  reports the Court previously received, that Mr. Buerkle is

19  competent to understand the charges and assist his attorney in

20  his defense; that he has knowingly, intelligently, and

21  voluntarily given up his trial rights in order to enter a

22  knowing, intelligent, and voluntary plea.  And I therefore

23  accept that plea.

24           There is no plea agreement in this case, although

25  the parties put certain agreements on the record, and the

1    Court sees nothing wrong wit any of that and is prepared to go

2    forward.

3            Are both counts -- is the week of March 5th

4    acceptable to the parties?

5            MR. NESBETT:  Yes, Your Honor.

6            THE COURT:  Mr. McCoy?

7            MR. MCCOY:  Yes, it is.  I -- I'm gone part of

8    March, but I'm here for March 5th.

9            THE COURT:  Okay.

10        (Pause)

11            THE COURT:  How about 11 o'clock on Monday,

12    March 5th?

13            MR. NESBETT:  That works, Your Honor.

14            THE COURT:  Now, at the moment I'm allowing an hour

15    for this matter.  If in the weeks preceding March 5th it comes

16    to counsel's attention that more time is going to be needed,

17    please let my case manager know so that we can make

18    arrangements.

19            Mr. Buerkle, the next order of business is for you

20    to meet with the probation officer--he's seated in the first

21    row--and go over the case with him to aid him in preparing a

22    presentence report.  You have the right to have Mr. McCoy

23    present with you when you're interviewed and at any subsequent

24    interviews.  And that's an important right:  If he's there, he

25    can answer your questions and help you to answer the probation

1 | officer's questions, so you should not make an appointment to

2 | see the probation officer unless Mr. McCoy can be there with

3 | you.  You should check with him.  And if for any reason,

4 | Mr. McCoy's schedule requires that he not be present at a

5 | prearranged meeting, you should ask him to reschedule the

6 | meeting.  You shouldn't just go by yourself, okay?

7 |     MR. BUERKLE:  Yes.

8 |     THE COURT:  Okay.  Anything further at this time,

9 | Mr. Nesbett?

10 |     MR. NESBETT:  No, Your Honor.  Thank you.

11 |     THE COURT:  Mr. McCoy?

12 |     MR. MCCOY:  No, Your Honor.  Thank you.

13 |     THE COURT:  Very well.  Good luck, Mr. Buerkle.

14 |     MR. BUERKLE:  Thank you.

15 |     THE CLERK:  All rise.  This court now stands

16 | adjourned subject to call.

17 |   (Proceedings concluded at 10:37:10 a.m.)

18 | **CERTIFICATE**

19 | I certify that the foregoing is a correct transcript from the
electronic sound recording of the proceedings in the above-

20 | entitled matter.

21 |

22 | M. Gaylene Larrecou, Transcriber     2-12-07

23 | United States Court Approved       Date
AAERT Certified #00285

24 |

25 |

1                          TABLE OF CONTENTS

2  CHANGE OF PLEA (STATUS CONFERENCE), 12/21/06  . . . . . Page 3

3  WITNESSES              VOIR DIRE    DIRECT    CROSS   REDIRECT   RECROSS

4  FOR THE DEFENDANT:

5  Wesley Bartlett Buerkle     6        –         –        –         –

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25